# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**JAMES MCLIN,**                                                                             **CIVIL ACTION**
**REPRESENTING HIS**
**DECEASED SPOUSE,**
**VICKIE LYNN MCLIN**

**VERSUS**                                                                                 **NO. 14-114-JWD-RLB**

**CAROLYN W. COLVIN,**
**ACTING COMMISSIONER**
**OF THE SOCIAL SECURITY**
**ADMINISTRATION**

## NOTICE

      Please take note that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court for the Middle District of Louisiana.

      Under 28 U.S.C. § 636(b)(1), you have **14 days** from receipt of this Notice to file written objections to the proposed findings of fact and conclusions of law in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on August 28, 2015.

                                                                         **RICHARD L. BOURGEOIS, JR.**
                                                                         **UNITED STATES MAGISTRATE JUDGE**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| JAMES MCLIN, REPRESENTING HIS DECEASED SPOUSE, VICKIE LYNN MCLIN | CIVIL ACTION |
| VERSUS | NO. 14-114-JWD-RLB |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

James McLin, on behalf of his deceased wife, Vickie Lynn McLin (Plaintiff), seeks judicial review of a final and unfavorable decision of the Commissioner of the Social Security Administration (Commissioner) pursuant to 42 U.S.C. § 405(g). Specifically, Plaintiff appeals the denial of her application for supplemental security income benefits. (R. Doc. 1).[1] Having found all of the procedural prerequisites met (Tr. 3-5); the Court has properly reviewed Plaintiff's appeal. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you . . . file an action in Federal district court . . . ."). For the reasons given below, the Court **RECOMMENDS** that the decision of the Commissioner be **AFFIRMED** and Plaintiff's appeal be **DISMISSED with prejudice**.

---

[1] References to documents filed in this case are designated by: (R. Doc. [docket entry number(s)] at [page number(s)]). Reference to the record of administrative proceedings filed in this case is designated by: (Tr. [page number(s)]).

I.      PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits (DIB) on April 24, 2007. (Tr. 236-43). In her application, Plaintiff alleged that she became disabled on April 6, 2005 because of morbid obesity, emphysema, COPD, high blood pressure, poor circulation, sleep apnea, and depression. (Tr. 132, 236). Because she last met the insured status requirements of the Act on March 31, 2006, Plaintiff had to establish disability between April 6, 2005 and March 31, 2006. (Tr. 15, 102, 118). As explained below, Plaintiff's application was ultimately denied by the Commissioner after a long administrative process, which consisted of 3 hearings, 3 ALJ decisions and 2 remands by the Appeals Council.

II.     ALJ DETERMINATIONS

In determining disability, the Commissioner (through an ALJ) works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process). First, the claimant must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c). At step three the ALJ must conclude the claimant is disabled if he proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing of Impairments). Fourth, the

claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work. 20 C.F.R § 404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

In this case, three ALJ decisions were issued following each administrative hearing — the first two decisions were issued by ALJ Wahlder and the third by ALJ Ragona. As explained below, all three decisions reached varying conclusions at steps 2, 3, 4 and 5.

Plaintiff's first hearing was held before ALJ Wahlder on September 9, 2008 (Tr. 70-80), after her application was denied at the initial level (Tr. 95). Plaintiff appeared and testified at the hearing without the assistance of counsel, but with her daughter, Claudia McLin. (Tr. 72, 73).

An unfavorable decision was issued by ALJ Wahlder on December 24, 2008. (Tr. 100-05). In this first denial, ALJ Wahlder found in relevant part:

> Plaintiff had the following severe impairments: hypertension, COPD, emphysema, PAD/PVD, sleep apnea, morbid obesity, and depressive disorder.
>
> Plaintiff's impairments did not meet or equal any of the Listings, either alone or in combination.
>
> Although Plaintiff's mental impairment did not equal the severity of a Listing, it still caused mild restriction in activities of daily living; moderate restriction in social functioning; mild restriction in concentration, persistence and pace; but no episodes of decomposition.
>
> Through March 31, 2006, Plaintiff had the residual functional capacity (RFC) to perform the full range of sedentary work.[2]

---

[2] According to the Regulations:

> Through March 31, 2006, Plaintiff was able to perform her past relevant work as a "farm control specialist," which "did not require the performance of work-related activities precluded" by the RFC.

(Tr. 102-05). ALJ Wahlder's finding that Plaintiff could perform the full range of sedentary work was largely based on her own testimony and a report by consultative examiner, Dr. Adeboye Francis. (Tr. 104, 454-63).

Plaintiff requested review of the denial before the Appeals Council. The Appeals Council granted Plaintiff's request and remanded the case to back to ALJ Wahlder on December 30, 2010. (Tr. 108-10). In its Order, the Appeals Council explained that the ALJ's denial was deficient because the ALJ: (1) found moderate limitations in social functioning, but failed to incorporate the limitation into the RFC; (2) incorrectly identified Plaintiff's past relevant work as 'farm control specialist,' when the record was clear that she last worked as a 'form control specialist; and (3) the ALJ found Plaintiff capable of performing her past relevant work without determining whether that work was "within the limitations of the assessed residual functional capacity assessment." (Tr. 108). Upon remand, the Appeals Council instructed the ALJ to further consider Plaintiff's obesity under Social Security Ruling 02-1P and explain how it impacted her ability to function. (Tr. 108-09).

Following remand, a second hearing was held before ALJ Wahlder on June 29, 2011. (Tr. 81-94). Plaintiff appeared and testified at the hearing with the assistance of counsel. (Tr. 83). Her daughter, Claudia McLin Strickland, was also present and gave testimony. (Tr. 91). ALJ

---

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

Wahlder issued a second unfavorable decision on August 2, 2011. (Tr. 116-22). Consistent with his first decision, ALJ Wahlder again found:

> Plaintiff had the following severe impairments: hypertension, COPD, emphysema, PAD/PVD, sleep apnea, morbid obesity, and depressive disorder.
>
> Plaintiff's impairments did not meet or equal any of the Listings, either alone or in combination.

(Tr. 118). However, inconsistent with his earlier findings concerning the effects of Plaintiff's mental impairment, her RFC, and ability to perform her past relevant work, ALJ Wahlder now found:

> Although Plaintiff's mental impairment did not equal the severity of a Listing, it still caused mild restriction in activities of daily living; *mild* restriction in social functioning; *moderate* restriction in concentration, persistence and pace; but no episodes of decomposition.[3]
>
> Plaintiff had the residual functional capacity to perform the full range of light work.
>
> Plaintiff was unable to perform "any" of her past relevant work. Plaintiff had past relevant work as a 'forms control specialist,' which required her to lift up to 50 pounds.
>
> Considering Plaintiff's age, education, work experience and RFC, a finding of not disabled was directed by Rule 202.14 of the Medical Vocational Guidelines.

(Tr. 119, 121-22).

About a month after ALJ Wahlder's second denial, Plaintiff passed away after suffering a myocardial infarction (heart attack) on September 1, 2011. (Tr. 570). Her husband, James McLin, was made a substitute party to represent his wife's interests in the remaining proceedings. (Tr. 193).

Following this second denial by ALJ Wahlder, a review of the decision was requested before the Appeals Council. This second request was likewise granted and the Appeals Council

---

[3] In his earlier decision, ALJ Wahlder found Plaintiff only had mild restriction in concentration, persistence and pace, but had moderate restriction in social functioning. (Tr. 103).

ordered that the case be remanded to a different ALJ on September 20, 2012. (Tr. 128-30). On remand, the Appeals Council directed the new ALJ, Lawrence Ragona, to consider Plaintiff's "extreme obesity" and the "effect it has upon [her] ability to perform routine movement and necessary activity within the work environment (Social Security Ruling 02-1p)." (Tr. 129). The Appeals Council also instructed ALJ Ragona to "[g]ive further evaluation to the claimant's maximum residual functional capacity" and her "subjective complaints." (Tr. 129).

A third and final hearing was held on March 13, 2013 before ALJ Ragona. (Tr. 42-69). Plaintiff's husband, James McLin, and daughter, Christy Jones, appeared and testified on her behalf with the assistance of counsel. (Tr. 45-61). For the first time, a vocational expert, Wendy Klamm, was present and gave testimony. (Tr. 62-65). After the hearing, ALJ Ragona issued the third unfavorable decision in this case on May 29, 2013. (Tr. 13-21). ALJ Ragona found:

> Plaintiff suffered from the following severe impairments: mild restrictive pulmonary defect, obstructive sleep apnea, obesity and depressive disorder.

(Tr. 15). More similar to ALJ Wahlder's second decision, ALJ Ragona found:

> Plaintiff's impairments did not meet or medically equal a Listing, either alone or in combination.
>
> Although Plaintiff's mental impairment was not Listing-level, it caused mild restriction in Plaintiff's activities of daily living; mild difficulties in social functioning; moderate difficulties in maintaining concentration, persistence and pace, "particularly for complex tasks;" but no episodes of decomposition.
>
> Plaintiff had the residual functional capacity to perform light work. Although she could not perform complex work, Plaintiff could perform the type of detailed work typically required in semi-skilled jobs.[4]

(Tr. 17-19). ALJ Ragona's decision ended at step 4, finding:

> Through March 31, 2006, Plaintiff could perform her past relevant work as a sales clerk (light work), because it did not require the performance of work-related activities precluded by the RFC.

---

[4] ALJ Wahlder did not make the same distinction between "detailed" and "complex" work at step 3 or in determining the RFC.

(Tr. 21). Plaintiff's request that the Appeals Council review this third unfavorable decision was denied. After which, Plaintiff sought review before this Court.

### III. STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted). Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g.*, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor

substitute our judgment for the Secretary's"); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). If the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

## IV. DISCUSSION

The ALJ is responsible for determining a claimant's residual functional capacity (RFC). *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). The RFC is a determination of the claimant's ability, despite any physical and mental limitations. *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). The ALJ may not establish certain limitations or lack of limitations without the support of substantial evidence — medical or otherwise. *Patterson v. Astrue*, No. 08-13, 2008 WL 5104746, at *4 (N.D. Miss. Dec. 1, 2008). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but are not conclusive when derived by ignoring evidence, misapplying the law or judging matters entrusted to experts." *Nyugen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (citation omitted). Ultimately, the ALJ must "consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position." *Loza*, 219 F.3d at 393.

Here, ALJ Ragona found Plaintiff had the residual functional capacity to perform the exertional demands of light work; and because those demands were consistent with her past work as a sales clerk,[5] Plaintiff was found not disabled at step four. (Tr. 19-21). A job falls within the

---

[5] According to the Dictionary of Occupational Titles and the VE's testimony, the job of "sales clerk" is classified as "light work." DOT No. 290.477-014, 1991 WL 672554 (Dep't of Labor 4th ed. 1991); (Tr. 62).

category of light work "when it requires a good deal of walking or standing." 20 C.F.R. § 404.1567(b). Consultative Examiner, Dr. Adeboye Francis, examined Plaintiff on September 25, 2008 before providing a Medical Source Statement of Plaintiff's "ability to do work-related activities (physical)." Being the only medical source statement in the record relating to Plaintiff's physical abilities,[6] the ALJ relied on Dr. Francis' opinion in formulating Plaintiff's RFC:

> On September 25, 2008, Dr. Adeboye Francis, M.D. examined the claimant at the request of Disability Determination Services. . . . Other than the obesity and an inability to stand and walk on her heels and toes, the claimant's physical examination was normal. . . . Dr. Francis opined that the claimant was able to lift and carry up to 50 pounds occasionally, sit seven hours in a workday, stand four hours in a workday and walk three hours in a workday. He opined the claimant was able to climb, balance, stoop, kneel, and crawl on an occasional basis, but was unable to crouch. He found no other significant limitations in the claimant's ability to perform the physical activities typically required of competitive, remunerative employment.

(Tr. 20, 455-63). Dr. Francis additionally observed that Plaintiff "did not make use of any assistive device" to walk and she "was able to get on and off the exam table without difficulty." (Tr. 462).

Comparing Dr. Francis' opinion to the remaining record evidence, the ALJ explained that while "Dr. Francis found the claimant able to perform a wide range of medium work activity, the undersigned finds the claimant's obesity" in addition to cigarette use and respiratory issues, "could have caused greater limitations than those assessed by Dr. Francis." (Tr. 20). For that reason, the ALJ found Plaintiff capable of performing light work.

The Court notes that Dr. Francis was the only examining source to offer an opinion as to Plaintiff's ability to perform the exertional requirements of work — standing, walking, sitting,

---

[6] Consultative Examiner, Dr. Alan Taylor, provided a psychiatric medical source statement regarding Plaintiff's mental abilities on November 13, 2008. (Tr. 465-68).

lifting, etc. More importantly, Plaintiff does not challenge Dr. Francis' medical opinion or any of his specific findings.

In terms of Plaintiff's non-exertional impairments, the ALJ considered the opinion of Consultative Examiner, Dr. Alan Taylor. Dr. Taylor provided a psychiatric medical source statement on November 13, 2008. (Tr. 465-68). Based on his examination, Dr. Taylor opined that Plaintiff

> [D]oes not have a significant impairment in her concentration and attention abilities. She would have some difficulty responding appropriately to supervision and interacting appropriately with coworkers due to her emotional instability. While she appears to be experiencing some emotional difficulties, they are not deemed to be of significant severity to impair employability at this time.

(Tr. 468). The ALJ considered Dr. Taylor's opinion, in connection with Plaintiff's "depressive disorder as well as her sleep apnea," before formulating the nonexertional aspect of Plaintiff's RFC. (Tr. 20). The Court again notes that Plaintiff has not raised any challenge to Dr. Taylor's opinion, which is the only psychiatric medical source statement in the record.

On appeal, Plaintiff's overall argument is that the ALJ "erred in his consideration of the limiting effects of the plaintiff's morbid obesity." (R. Doc. 8 at 9). More specifically, Plaintiff "maintains that her stand/walk limitations would preclude a light RFC," which requires the ability to stand and/or walk for 6 hours in an 8-hour workday. (R. Doc. 8 at 11). "It seems inconceivable," Plaintiff suggests, "that in 2006, at a weight of over 375 pounds, and experiencing bilateral pain and numbness in her feet substantial enough to interfere with driving and sleep, the plaintiff would be capable of performing work activity requiring that she be on her feet for six hours of an eight hour day." (R. Doc. 8 at 10). Having considered Plaintiff's argument in connection with the entire administrative record, as discussed below, the Court finds Plaintiff has not pointed to evidence sufficient to cast doubt on the RFC assessment or the

Commissioner's ultimate finding. Moreover, inherent in Plaintiff's argument is a request that the Court reweigh the evidence of record and reach its own medical conclusion of Plaintiff's abilities, neither of which is appropriate on judicial review. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

In support of her argument, Plaintiff almost exclusively relies on the testimony of lay witness at each of the three hearing — her own, her daughter's and her husband's testimony. (R. Doc. 8 at 9-11) (citing (Tr. 47, 55, 58, 59, 61, 75, 76)). Indeed, the administrative record contains a considerable amount of hearing testimony provided by Plaintiff and her family describing: Plaintiff's weight gain resulting in increased fatigue and immobility (Tr. 55-56, 59-61, 74, 75, 86, 88); symptoms of numbness and burning in Plaintiff's toes making her apprehensive to drive and less mobile (Tr. 47, 56, 58, 59, 76, 353); and shortness of breath. (Tr. 76, 79).

The Court acknowledges that "information may be obtained from family members, friends, and former employers regarding the course of the claimant's condition." *Ivy v. Sullivan*, 898 F.2d 1045, 1049 (5th Cir. 1990). But while this testimonial evidence should be considered, it cannot, on its own, establish the existence of a disabling condition. Rather, a finding of disability must be based on contemporaneous medical evidence that corroborates the claimant's allegations. Here, the sparse medical records available from the relevant time period (between April 6, 2005 and March 31, 2006) do not corroborate Plaintiff's allegations.

Plaintiff presented to Earl K. Long on September 6, 2005 with complaints of chest pain. (Tr. 418, 493). Plaintiff's EKG was "normal," (Tr. 419); she was diagnosed with heartburn and released. (Tr. 418). A March 22, 2006 radiology report of Plaintiff's chest showed a normal heart size and "stable chest as compared to previous study of [2005]." (Tr. 423). A physical

examination on that same day relayed Plaintiff's self-report that she was "doing much better," and objectively described her hypertension as being under "good control." (Tr. 497). On February 15, 2006, Plaintiff presented to Earl K. Long for follow-up. (Tr. 498). Doctors reported shortness of breath and advised her to stop smoking. (Tr. 498).

Plaintiff weighed 357 pounds when she presented to Earl K. Long on November 16, 2005 for follow-up treatment. On December 7, 2005, Plaintiff complained of shortness of breath and lower back pain that sometimes interfered with walking. (Tr. 500). On December 8, 2005, a Pulmonary Function Analysis confirmed "there is no obstructive lung defect," although there was a "mild restrictive lung defect" present. (Tr. 424). Otherwise, the Study found "a moderate" decrease in diffusing capacity; however, this was "interpreted as an insignificant response to broncholidator." (Tr. 424). A Cardiac Stress Test performed on August 4, 2006 — 5 months after her date last insured — was still negative for ischemia and showed a normal ejection fraction of 65 percent. (Tr. 420-21).

Although Plaintiff claims that tingling, numbness, fatigue, shortness of breath and back pain prevented her from walking or even driving during the relevant period, the contemporaneous medical evidence does not contain findings to support these allegations, nor do they indicate that Plaintiff subjectively complained of most of these symptoms. The majority of the record evidence was generated between 2010 and 2011 – 4 to 5 years after the relevant time period. (Tr. 502-590). These later records do indicate a decline in Plaintiff's condition to a level more consistent with her allegations. However, Plaintiff's 2010-2011 medical records in no way suggest that they relate to Plaintiff's condition during the relevant time period, nor do they render opinions as to the severity of her conditions during the relevant period. Because the testimony of

Plaintiff and her family is not corroborated by the contemporaneous medical evidence, it is insufficient to cast doubt on the existence of substantial evidence supporting the RFC.

Finally, Plaintiff suggests that the ALJ's decision cannot be supported by substantial evidence because: "Most conspicuously lacking in the ALJ's RFC findings is any reference whatsoever to the Plaintiff's bilateral neuropathy." (R. Doc. 8 at 9). At her initial hearing in September 9, 2008, Plaintiff presented a list of medications that included a prescription for Neurontin to treat neuropathy. (Tr. 332). Plaintiff now claims that her 2008 diagnosis of neuropathy establishes the existence of that disease before March 31, 2006, as Plaintiff and her family testified that she experienced numbness and tingling during 2005 and 2006. (R. Doc. 8 at 9-10). The Court disagrees.

"[R]etrospective medical diagnoses, uncorroborated by contemporaneous medical reports but corroborated by lay evidence relating back to the claimed period of disability, could support a finding of past impairment." *Likes v. Callahan*, 112 F.3d 189, 191 (5th Cir. 1997) (ALJ should have considered whether "retrospective" diagnosis of PTSD in 1991 established onset of disability before 1975, where 3 doctors diagnosing PTSD found the condition had been present "since [claimant] left Vietnam in 1968" and claimant's relatives offered corroborating evidence of onset before 1975).

While Plaintiff points to lay evidence of neuropathic symptoms existing prior to March 31, 2006, none of her medical records indicate that her diagnosis of neuropathy sometime in 2008 was retrospective. In other words, Plaintiff has not presented evidence that while her neuropathy was not diagnosed until 2008, her doctors concluded that the condition had actually been present prior to her date last insured. Therefore, Plaintiff's argument is insufficient to show

that substantial evidence does not support the RFC or the ALJ's particular finding that she could not stand for 6 hours in an 8-hour day.

Plaintiff does not cite to any additional evidence challenging the ALJ's RFC and ultimate finding. Because the Court finds that the ALJ thoroughly considered and discussed Plaintiff's obesity, along with the available medical and testimonial evidence, the Court finds that substantial evidence supports the ALJ's decision.

## V. CONCLUSION

For the reasons given above, the Court **RECOMMENDS** that the Commissioner's decision be **AFFIRMED** and that Plaintiff's appeal be **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on August 28, 2015.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**